FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 NOV -4 AM 11:31

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV 4 1999

| | |
|---|---|
| TERRILL W. SANDERS, as Administrator of the Estate of Mary Stephanie Bryant, deceased, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | CIVIL ACTION NO. 98-G-0646-S |
| ) THE BRADFORD GROUP, INC., d/b/a ) BRADFORD HEALTH SERVICES, an ) Alabama corporation, ) ) Defendant. ) | |

MEMORANDUM OPINION

This cause is before the court for reconsideration of defendant's motion for summary judgment. The court indicated to the parties at the pretrial conference held July 20, 1999, that it might reconsider its denial of defendant's motion for summary judgment. On August 18, 1999, the court entered a scheduling order, requesting briefs and supporting materials. The matter is now ripe for decision.

This is a wrongful death action brought by the Administrator of the Estate of Mary Stephanie Bryant against the Bradford Group, L.L.C. d/b/a Bradford Health Services ("Bradford"), and arises out of the death of Mary Stephanie Bryant ("Ms. Bryant") on February 6, 1997. On February 6, 1997, Ms. Bryant was struck on Arkadelphia Road by a motor vehicle after Ms. Bryant had left Bradford's treatment facility in Warrior, Alabama.

182

On the afternoon of her death, Ms. Bryant contacted her former counselor at Bradford, after which the counselor asked one of Bradford's crisis response consultants to phone Ms. Bryant. Ms. Bryant indicated to the crisis response consultant that she desired to come to Bradford's Warrior facility for help. Bradford dispatched a taxi to pick up Ms. Bryant and bring her to the Warrior facility.

At some time after a consultation and evaluation, Ms. Bryant walked out of Bradford's front entrance. Two Bradford crisis response consultants went after Ms. Bryant and asked her to return to the facility. Mr. Curbow, a Bradford employee, instructed Lisa Sullins to sit with Mary Stephanie Bryant. Later, Ms. Bryant again left Bradford; she carried a Bible and a picture album. Thereafter, an arriving visitor informed Bradford's receptionist that a young lady was walking down the driveway. Two crisis response consultants left by car to look for Ms. Bryant. Ms. Bryant was hit by a motor vehicle driven by Christopher Y. Hill on Arkadelphia Road, over a mile away from Bradford's premises and was pronounced dead at Carraway Hospital.

All of plaintiff's claims against Bradford are governed by the Alabama Medical Liability Acts.[1] It cannot be questioned that Bradford is a "hospital" and therefore, is a "health care provider" as that term is defined by the AMLA. See Ala.

---

[1] These include the Alabama Medical Liability Act, the Alabama Medical Liability Act of 1987, and the Alabama Medical Liability Act of 1996. Together they provide the statutory law applicable to medical malpractice actions governed by Alabama law. The court will refer to these acts collectively as the Alabama Medical Liability Act ("AMLA").

2

Code §§ 6-5-542(1), 6-5-481(7) and 22-21-20(1)[2] (1975). Regardless of the manner in which plaintiff might characterize his claims, in substance, he is alleging that Bradford breached its duty of care owed to Ms. Bryant. It is the substance of the action not its form that determines whether it is a medical malpractice action. Allred v. Shirley, 598 So. 2d 1347, 1348 (Ala. 1992). The court in Allred recognized the broad application of the AMLA:

> The "standard of care" as defined in the Alabama Medical Liability Act applies to medical malpractice actions, whether they relate to intentional or to unintentional conduct and whether they are based on tort or on contract theories.

598 So. 2d at 1348.

The AMLA imposes upon hospitals the duty to exercise "that degree of care, skill, and diligence used by hospitals generally in the community." Ala. Code § 6-5-484(a) (1975). This has been held to refer to the "national hospital community."

> A hospital owes those present in connection with care and treatment . . . a duty to exercise that degree of care, skill, and diligence had and exercised by those hospitals engaged in the same kind of operation, in similar conditions or under similar circumstances.

Lamont v. Brookwood Health Services, Inc., 446 So. 2d 1018, 1020 (Ala. 1983). There are three essential elements to a claim under the AMLA:

---

[2] Section 6-5-481(7) in error refers to § 22-21-21 as providing the definition of hospital. Hospital is in fact defined in § 22-21-20(1) and the reference in § 6-5-481(7) must be read to refer to that section. See Ex Parte Northport Health Service, Inc., 682 So. 2d 52, 55 n. 1 (Ala. 1996)(noting that § 22-21-21 does not define hospital but that § 22-21-20 does and then utilizing that definition); Rosemont, Inc. v. Marshal, 481 So. 2d 1126, 1129 (Ala. 1985)(utilizing the definition of hospital found in § 22-21-20).

> To recover damages for an alleged breach of this duty, a plaintiff must produce evidence that establishes 1) the appropriate standard of care, 2) the [hospital's] deviation from that standard, and 3) a proximate causal connection between the [hospital's] act or omission constituting the breach and the injury sustained by the plaintiff.

Bradford v. McGee, 534 So. 2d 1076, 1079 (Ala. 1988)(citations omitted). The AMA imposes the additional requirement that each of the above elements be established "through expert testimony, unless the lack of skill or care is so apparent as to be within the comprehension of the average layman." Williams v. Spring Hill Memorial Hosp., 646 So. 2d 1373, 1375 (Ala. 1994). In spite of the plaintiff's argument to the contrary, the court concludes that the medical intricacies in the instant case require that the plaintiff prove each of these elements through competent expert testimony. This case presents very complicated questions as to the extent of the duty owed Ms. Bryant and as to Bradford's breach of those alleged duties. The question of whether any alleged breach of duty by Bradford proximately caused Ms. Bryant's injuries likewise raises issues beyond the comprehension of the average layman. Therefore, unless the plaintiff introduces competent expert testimony establishing a genuine issue of fact as to each of these elements, summary judgment must be entered in favor of the defendant.

If the plaintiff has not introduced a genuine issue for trial as to the proximate causal connection between any alleged breach of duty on the part of Bradford and the death of Ms. Bryant, summary judgment must be entered in favor of Bradford. This is so no matter what standard of care Bradford is alleged to have breached. Therefore, the court will now turn to the issue of proximate cause.

The court in McAfee v. Baptist Medical Center discussed the burden placed upon a plaintiff in a medical malpractice action to show a proximate causal connection between the defendant's act or omission and the plaintiff's injury:

> In medical malpractice cases, the plaintiff must prove that the alleged negligence "probably caused the injury." This has been the standard in Alabama for decades. In the 1929 case of McKinnon v. Polk, 219 Ala. 167, 121 So. 539 (1929), this Court stated:
>
>> "The proof must go further than merely show that an injury could have occurred in an alleged way—it must warrant the reasonable inference and conclusion that it did so occur as alleged—and the inference merely that it could so occur does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."

641 So. 2d 265, 267 (Ala. 1994)(citations omitted). The expert evidence relied upon by the plaintiff to establish proximate causation must have "selective application."

> It is also well settled that evidence indicating merely that the alleged negligence was one of several possible causes of the injury is not sufficient. We have stated that the evidence produced by the plaintiff must have "selective application" to one theory of causation.

Cates v. Colbert County-Northwest Alabama Healthcare Authority, 641 So. 2d 239 (1994)(citations omitted). Therefore, in the present case, the plaintiff must introduce expert evidence sufficient to allow a jury to find that Bradford's alleged negligence probably caused Ms. Bryant's death. It is not enough merely to introduce evidence that tends to show that her death was possibly caused by the alleged negligence.

A review of the expert testimony submitted by the plaintiff reveals that it is insufficient to create a jury question as to the proximate causation element of plaintiff's

claim.³ Regardless of the standard of care put forth by the plaintiff, there is a complete failure of expert evidence tending to establish that such failure was the proximate cause of Ms. Bryant's injuries.⁴

There is insufficient evidence, expert or otherwise, to allow a jury to find that Ms. Bryant committed suicide. None of the evidence put forth by the plaintiff has selective application to the conjecture that Ms. Bryant committed suicide. Plaintiff's expert's testimony is insufficient to create a jury question on that issue. Dr. Merlin's evidence at best merely suggests that Ms. Bryant might have had suicidal tendencies. The lack of expert evidence on the issue of suicide is demonstrated by Dr. Merlin's supplemental affidavit, in which he sums up as follows:

---

³ The court's consideration of the expert evidence submitted by the plaintiff should not be taken as a ruling that it is admissible. The court has strong doubts as to the admissibility of such evidence in light of Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (March 23, 1999). Since the court has determined that the proffered expert evidence is in any event insufficient to create an issue for trial, a ruling as to its admissibility is unnecessary.

⁴ The possible exception is plaintiff's expert's assertion that the plaintiff should have been held against her will. Eg. Merlin Depo. at 135 (asserting that Bradford should have locked the plaintiff up to prevent her from leaving). The court cannot find that Bradford was under a duty to falsely imprison the plaintiff. It is such assertions that call into question the admissibility of Dr. Merlin's evidence. Apparently recognizing this as an untenable position, Dr. Merlin's supplemental affidavit is not as blatant in asserting that Bradford was under a duty to hold Ms. Bryant against her will, though it does suggest Bradford breached its duty by "failing to keep her within the facility and to keep her from fleeing while intoxicated . . . ." Merlin Supp. Affidavit at ¶ 25(e). The court notes that the plaintiff would have to show that the failure to hold Ms. Bryant against her will probably caused her death, not merely that if she had been so held she would not have been killed. (See the discussion infra, concerning Bradford's failure to admit Ms. Bryant.)

6

> Given the factors known to Bradford, she was at high risk for suicide, and her injury or death as a result of her intoxication, emotional upset, or suicidal ideations, was foreseeable to Bradford. Their duty to care for Stephanie was the same, regardless of which factor caused her death.[5]

(Merlin Supp. Affidavit at ¶ 38.) Dr. Merlin's evidence, therefore does not have selective application to <u>any</u> of the various causes for Ms. Bryant's death put forward by the plaintiff and cannot support a jury finding that she committed suicide.

The nonexpert evidence likewise is insufficient to support a jury finding of suicide. It consists entirely of speculation based upon the location of Ms. Bryant in the roadway at the time she was struck by the truck that killed her. Such evidence is equally consistent with a finding that Ms. Bryant was struck due to her own negligence.[6] Therefore, any alleged negligence of Bradford premised upon a breach of a duty to prevent Ms. Bryant from committing suicide is insufficient to present a jury question on the proximate causation element of plaintiff's claim.[7]

---

[5] There is no evidence that any of these "factors" proximately caused Ms. Bryant's death. All of the evidence is equally supportive of the proposition that she was killed entirely because of her own negligence or without any negligence on the part of anyone.

[6] There appears to be no suggestion that the driver of the truck was in any way negligent.

[7] The court does not indicate that Bradford had a duty to prevent Ms. Bryant from committing suicide. The court pretermits the question of what standard of care Bradford owed to Ms. Bryant because the plaintiff has not introduced sufficient evidence of proximate causation. The court need not, therefore, wrestle with the exact extent and scope of Bradford's duty to Ms. Bryant. Defining such duty in such a complicated factual context is best left to cases in which proximate cause can be established.

7

Apart from plaintiff's theories based upon Ms. Bryant having committed suicide, the plaintiff has introduced no expert evidence to show that any alleged deviation from the standard of care by Bradford prior to Ms. Bryant's second elopement probably caused her injuries. There is no expert evidence in the record tending to show that had Bradford acted in accordance with the plaintiff's asserted standard of care (apart from illegally holding Ms. Bryant against her will) Ms. Bryant would not have been injured. The plaintiff variously asserts that Ms. Bryant should have been "supervised" "evaluated" and "monitored." However, the plaintiff has introduced no expert evidence to show that if Ms. Bryant had been so treated she would not have voluntarily left the Bradford facility as she in fact did. Therefore, the failure to undertake such measures cannot be found to be the proximate cause of Ms. Bryant's injuries. As for plaintiff's assertion that Bradford deviated from the standard of care by not admitting Ms. Bryant, the question is not whether such admission would have prevented Ms. Bryant's death, but rather whether the <u>denial</u> of admission proximately caused it.[8] Because there is no evidence that has selective application to any particular conjecture as to how Ms. Bryant came to be struck by the truck that killed her, Bradford's failure to admit her cannot be found to be the proximate cause of her death. All of the evidence that tends to indicate that the accident was caused

---

[8] It is the denial of admission that plaintiff asserts caused Ms. Bryant's death. Even if her admission would have prevented her death, it must still be shown that the denial of admission was the proximate cause of her death. Plaintiff's "but-for" analysis is only the first step in determining proximate causation issues. Of course, as with the alleged acts or omissions noted above, if admitting her would not have prevented Ms. Bryant's injuries, failure to admit her could not be the proximate cause of her injuries.

8

by something other than Ms. Bryant's own negligence, equally supports a finding that negligence on the part of Ms. Bryant caused the accident. As noted, there is no direct evidence showing Ms. Bryant committed suicide, either by walking in the middle of the road with the intention of being hit or by throwing herself in front of the oncoming truck. She might have stumbled into the roadway through no fault of her own or been negligently walking in the roadway after dark. The evidence does not have selective application to any of these conjectures. Therefore, the evidence with equal probability supports Ms. Bryant's own negligence as the cause of the accident and a jury question has not been created on the proximate causation element of plaintiff's claims. See, McAfee, 641 So. 2d at 267.

Apart from a lack of evidence on the proximate cause element of plaintiff's claim, the uncontradicted evidence establishes that Ms. Bryant voluntarily and against the recommendation of Bradford personnel left the Bradford facility immediately prior to the time of the accident. She had left once before, but returned after Bradford employees encouraged her to do so. When she left the second time, the uncontested evidence is that employees of Bradford caught up with her and tried to convince her to return to the building. This breaks any chain of causation related to acts or omissions alleged to have been committed by Bradford prior to Ms. Bryant's second elopement.

Dr. Merlin asserts that Bradford breached the standard of care by "failing to keep Bradford personnel with her, while attempting to return her to the facility." (Merlin Supp. Affidavit at ¶ 25(f).) The affidavit and deposition testimony from the two Bradford

9

employees who attempted to get Ms. Bryant to return to the facility demonstrates that they did everything possible, short of illegally holding Ms. Bryant against her will, to get her to return to the facility. An excerpt from Jan Reed's deposition illustrates the situation faced by those employees.

> A:  I told Lisa, I said. Lisa, you see if you can run catch up with her while I grab my keys and I ran goat [sic] my keys out of my purse.
>
> Q:  Then what did you do, Jan?
>
> A:  I got in my car and proceeded to drive up the hill. And I saw Lisa. Lisa was behind Stephanie.
>
> Q:  Okay, and what did you do then?
>
> A:  I pulled beside her and started trying to motivate her to either get in the car with me or -- no. I had -- I parked my car and started with them. At first I was still in my car, and then she was walking so fast I thought maybe I could just run and catch up. So I parked my car at the foot of that hill and got out and neither Lisa nor I could catch . . . up with her because we were running up a hill.
>
> Q:  Right.
>
> A:  But I just continued to plead with her, Stephanie, please, let's go sit down and talk, or, you know, we can work something out, we can do something. And she kept saying no, and she kept on walking.
>
> Q:  Was she saying anything else?
>
> A:  She said if I go to that place, how would St. Ann's know where I am and I told her we would make sure that they know when they look for her we'll make sure they we [sic] tell them where she is.
>
> Q:  So were you trying to explain to her -- did you have a chance to tell Stephanie that you thought you had found her a place?
>
> A:  I told her that I found her a place.

> Q: While y'all were running up the hill
>
> A: Yes.
>
> Q: Did she say anything else as y'all went up the hill?[9]
>
> A: She just basically just kept saying. No, I'm not coming back. By this time she was getting farther away, and it was like kind of like shouting and hollering, you know it was a distance.

(Reed Depo. at 74-77.)

> A: When she -- as she was nearing that main road that's when I knew, and I told Lisa. And I told Lisa, I said she's going out on that road and that road is dark, so we he [sic] better get in the car to use the car lights. And I didn't want to be on that road either.
>
> Q: Because it's a dangerous road?
>
> A: Yeah.
>
> A: So we both ran back down and got back into my car but as we ran down the hill is when we heard a noise and we he [sic] really ran faster then because we didn't know he [sic] what this noise was.[10]
>
> Q: Did it occur to you that she may have been hit by a car?
>
> A: Yes.

(Reed Depo. at 86.) The testimony of Jan Reed is supported by the Affidavit testimony of Lisa Morgan, the other Bradford employee who attempted to get Ms. Bryant to return to the Bradford facility.

---

[9] In the deposition transcript the following answer is not separated from the question. The context makes clear that it is in fact the answer of Jan Reed.

[10] This answer is mislabeled in the deposition transcript as a question.

11

> The next contact I had with Ms. Bryant was when Ms. Jones called the crisis response department again and told me that someone had reported seeing a person walking up Bradford's driveway away from the facility. I went out to look for the person on foot until I reached the end of Bradford's lighted area where I could no longer see into the darkness. I had not seen Ms. Bryant at that point. Ms Reed had gone to get her car, and when Ms. Reed reached the point where I was standing, I got into her car, and we drove to look for the person. We Found Ms. Bryant squatting next to the road at the top of one of the hills on Albritton Road. As we approached, Ms Bryant stood, and we drove beside her slowly, trying to persuade her to get into the car. Ms. Bryant repeatedly refused to get into Ms. Reed's car, so I got out of the car and walked after Ms. Bryant. Ms. Bryant began walking rapidly, and I could not catch up with her. Meanwhile, Ms. Reed parked her car on Sparks Road and followed behind me on foot.
>
> Ms. Bryant was still within hearing distance from me as Ms. Reed and I walked after her up Albritton Road. I attempted several times to persuade Ms. Bryant to stop and return to Bradford with us. To each of my requests, Ms. Bryant replied "I don't care." . . . I also told her she was going to get hit by a car if she kept going. To this Ms. Bryant also replied, "I don't care." Ms. Bryant was walking very fast, and Ms. Reed and I could not keep up with her so we decided to go back to the car and follow after her, hoping that we could reach her and persuade her to return to Bradford. By this point, Ms. Bryant was almost to Arkadelphia Road, and we could see her turn and walk left onto Arkadelphia Road. Traffic at this time of the day was heavy and we could see Ms. Bryant's silhouette as car lights passed her on Arkadelphia Road.
>
> On our way back to get Ms. Reed's car, I heard a sound similar to the slamming of a garage door. Ms Reed and I then got into her car and drove in the direction that Ms. Bryant had been walking.

(Morgan affidavit at 3-4.) The evidence will not support a jury verdict that these employees breached any standard of care in failing to return Ms. Bryant to the Bradford facility. To the contrary, the evidence demonstrates that they did everything possible to get Ms. Bryant to return to the facility. Nor is there any expert evidence in the record that would support a finding that any asserted negligence on the part of these employees in

12

connection with their attempt to return Ms. Bryant to the building probably caused Ms. Bryant's death.

## CONCLUSION

The record will not support a jury finding that any of the alleged breaches of the standard of care by Bradford probably caused Ms. Bryant's death. Therefore, there exists no genuine issue as to any material fact and Bradford is entitled to a judgment as a matter of law. An appropriate order will be entered contemporaneously herewith.

DONE this 4th day of November 1999.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.